Walter J. Garic v. Commissioner. Lillian McG. Garic v. Commissioner.
Garic v. Commissioner
Docket Nos. 4449, 4450.
United States Tax Court
1946 Tax Ct. Memo LEXIS 68; 5 T.C.M. (CCH) 846; T.C.M. (RIA) 46231; October 4, 1946
*68 Hugh M. Wilkinson, Sr., Esq., and Hugh M. Wilkinson, Jr., Esq., 1835 Canal Bldg., New Orleans, La., for the petitioners. Donald P. Chehock, Esq., for the respondent. HILL
Memorandum Findings of Fact and Opinion HILL, Judge: Petitioners are husband and wife and filed separate income tax returns for the year 1941 on a calendar year and community property basis with the collector of internal revenue for the district of Louisiana at New Orleans. Respondent determined a deficiency in the income tax liability of each petitioner in the amount of $766.29 for the taxable year 1941. The deficiency resulted from respondent having added $4,232.86 to the petitioners' community income. The amount added represents income from a certain partnership. The question is whether a partnership agreement entered into by petitioner, Walter J. Garic, and his two daughters is effective for Federal income tax purposes, or whether the entire income of the partnership constitutes the community income of the petitioners. The cases, which have been consolidated, were submitted on oral testimony and exhibits. Findings of Fact Petitioners are residents of New Orleans, Louisiana. Reference to *69 petitioner in the singular hereinafter refers to petitioner Walter J. Garic unless otherwise stated. Petitioners have two daughters, Lillian E. Gloria Garic, born January 13, 1922, and Marjorie B. Garic, born September 14, 1923. Petitioner has been engaged in the business of buying, selling and exporting rice since about 1907. For sometime prior to the taxable year he was engaged in this business as a sole proprietor. On July 1, 1941, petitioner and his two daughters entered into a contract of partnership in commendam [1] which was recorded August 28, 1941. The terms of this partnership agreement were in part as follows: The parties hereto mutually agree to form a partnership in commendam for the operation of a general rice brokerage, milling, exporting and allied businesses, to be operated under the name of "WALTER J. GARIC" or "WALTER JOSEPH GARIC", as may be designated or preferred by the Party of the First Part. The Party of the First Part, Walter Joseph Garic, shall be a full partner, and shall *70 have charge of and shall operate the business and devote his time and energy thereto, during the duration of this contract. The capital with which the partnership shall commence business is the sum of Thirty Thousand Dollars ($30,000,00), of which the said Walter Joseph Garic, full partner, has advanced and furnished the sum of Fifteen Thousand Dollars ($15,000.00), and the said Lillian E. Gloria Garic and Marjorie B. Garic have advanced the sum of Seventy-five Hundred Dollars ($7500.00) each, or, together, the sum of Fifteen Thousand Dollars ($15,000.00), which amounts have been paid into the said partnership, as all of the parties hereto acknowledge. The amount advanced by the parties hereto is to be used solely in the operation of the business herein undertaken, and it is distinctly agreed and understood that the said Party of the Second Part and the said Party of the Third Part are not bound or obligated, in any manner, or for any sum, whatsoever, beyond the amount hereby paid and furnished, and they are hereby exonerated from any other payment, their total liability being limited to the amount herein advanced. It is further agreed and understood that the said Parties of the *71 Second and Third Part shall not devote any of their time or energy towards the operation of the business, and their interest shall be limited solely to the amount invested, but they shall be privileged, from time to time, to inspect the books and to receive statements of the condition of the business. With respect to the distribution of partnership profits the agreement provided as follows: The profits realized from the business, after first deducting all the usual and customary expenses and charges, shall be allocated between the parties hereto, as follows: One-half (1/2) of the net profits to the said Walter. Joseph Garic, and one-fourth (1/4) of the net profits to each of the said Parties of the Second and Third Part, provided, however, that any amount received or drawn by the said Party of the First Part shall be allocated and charged against his share of the said profits. * * * The partnership agreement contained further provisions which had the practical effect of securing to petitioner the guaranteed minimum of $10,000 a year of the partnership income. With respect to the withdrawal of capital and distribution of profits the agreement provided as follows: This partnership *72 in commendam is made for a period of ten (10) years, unless sooner dissolved, or unless extended by the consent of all of the parties hereto, all parties hereto being specifically obligated not to withdraw the capital so invested during the period specified. It is further agreed and understood that no distribution of profits shall be made unless directed by the Party of the First Part, but that, in all events, and in the event no distribution shall be made, that the share of the profits allocated to the partners in commendam, and undistributed at the expiration of this contract, shall be paid or distributed to them, it being the intention of the parties that the Party of the First Part shall use his discretion as to the necessity of retaining the profits, which may have been realized, for the operation of the business, and that he shall be the sole judge as to the amount to be distributed, and all distributions shall be made at such time as the Party of the First Part may designate. On September 22, 1941, the two daughters were emancipated by the order of the Civil District Court for the Parish of Orleans and they were thereby relieved of all the disabilities attaching to minority. *73 On September 23, 1941, the two daughters ratified and confirmed the partnership agreement which ratification was recorded May 20, 1942. On July 1, 1942, the partnership agreement was amended in respects not here material. The opening statement in the journal of the partnership, after reciting the general features of the partnership agreement, listed the partnership assets at a value of $48,113.30. These assets consisted of bank accounts, inventories and office equipment which had been taken over by the partnership from petitioner's sole proprietorship. This opening statement listed the partnership liabilities in the amount of $30,198.89. These liabilities consisted of $198.89 due for Social Security taxes, $15,000 as petitioner's capital contribution and $7,500 as a capital contribution by each of the two daughters. The amount by which the assets exceeded the liabilities, or $17,914.41, was listed in the opening entry as a liability in the form of an advance by petitioner. Actually the amount of $17,914.41 was entered as a balancing entry to make assets and liabilities correspond. It was not a loan by petitioner to the partnership. Prior to the creation of the partnership the daughters *74 had no property of their own. Nothing of value moved from them to the partnership. The daughters' interests in the partnership arose solely by virtue of the recitations in the partnership agreement and the book entries made pursuant thereto. Petitioner's purpose in establishing the partnership was to afford his daughters an income and thereby give them some financial security and independence. Some years prior to the establishment of the partnership petitioner had had considerable life insurance. In 1923 or 1924 petitioner had life insurance in the approximate amount of $90,000. Subsequent business adversity, however, had resulted in the lapsing of most of this insurance. In 1936 or 1937 petitioner learned that he was no longer an insurable risk. Doctors had advised petitioner to limit and reduce his business activities. The creation of the partnership was intended to furnish his family with the financial stability which had been lost by the lapsing of his insurance policies. H. A. Tabary was hired as manager of the partnership business in June 1941. The hiring of Tabary was intended to relieve petitioner of some of the burden of carrying on the business. In 1938 petitioner's rice *75 business had netted $800. In 1939 and 1940 his business had netted $6,000 and $11,799.66. From January 1, to June 30, 1941, the business netted $33,459.61. From July 1 to December 31, 1941, in other words the first six months of the partnership the business netted $4,232.86. From July 1, 1941 to June 30, 1942, the first fiscal year of the partnership, the business netted $51,454.61, which includes the amount of $4,232.86 just above mentioned. According to the partnership returns for the fiscal years ending June 30, 1943, 1944 and 1945, the partnership's ordinary net income was reported in the respective amounts of $68,270.11, $68,066.65 and $42,383.68. The rice business in the United States was greatly stimulated by the European War and by the Japanese War which cut off the Oriental rice supply. The first distribution of partnership profits was made to the daughters on May 29, 1942. On this date each daughter received the amount of $5,000. No distribution was made at that time to petitioner. On June 25, 1942, each daughter received $2,500 of the partnership profits. No distribution was then made to petitioner. On July 25, 1942, each daughter received partnership income of $5,361.15. *76 Thereafter and up to the present time the partnership income has been distributed from time to time in accordance with the partnership agreement. Both daughters deposited the income received from the partnership in their respective bank accounts over which petitioner had no control. The income received by the daughters was used by them to pay all their personal expenses including doctors' and dentists' bills, educational costs, clothes, etc. Each daughter paid her mother $70 a month for lodging. The personal expenses of the daughters, which were paid by them from their share of the partnership income, would have been paid by petitioner had the partnership not been formed. During 1941 the partnership borrowed money from the Hibernia National Bank 17 times in amounts ranging from $2,000 to $10,000. Thereafter and up to the fall of 1945 the partnership borrowed frequently and continually from this bank in amounts ranging from $1,000 to $50,000. Commencing in the fall of 1942 the partnership borrowed money at various times from the daughters. The partnership borrowed up to the time of the hearing about 10 times from each daughter in amounts varying from $3,000 to $15,000. The partnership *77 paid interest on money borrowed from the bank and the daughters at the rate of 4 1/2 percent. When the partnership borrowed money from the daughters, the daughters made out checks to the partnership in the amount of the loan and received in return therefor partnership notes signed by petitioner. These notes were paid by check, one check representing the principal amount of the loan and a separate check representing interest. At the time of the hearing each daughter was worth approximately $30,000, which amount had almost completely been derived from their partnership interests. Each daughter, in addition to her interest of $7,500 in the partnership, had at the time of the hearing approximately $4,000 in war bonds, $4,000 in cash and a $15,000 partnership note signed by petitioner as evidence of loans made by them to the partnership. Petitioners did not include as part of their community income the amount of $4,232.86, which amount represents partnership income from July 1 to December 31, 1941. In the statement accompanying the notice of deficiency with respect to petitioner's return, respondent stated as follows: It is held that the contract of partnership in commendam entered *78 into by you and your daughters, Lillian E. Gloria and Marjorie B. Garic, under date of July 1, 1941, is ineffective for Federal income tax purposes, and, therefore, the entire income from the rice business conducted by you under the name of "Walter J. Garic", for the period from July 1, 1941 to December 31, 1941, is your taxable income and, therefore, includible in arriving at community net income. Essentially the same explanation accompanied the notice of deficiency with respect to the return of petitioner Lillian McG. Garic. Opinion Respondent contends that the partnership is not effective for income tax purposes. Petitioner contends that it is. We agree with respondent that the partnership is not effective for income tax purposes and consider the instant circumstances controlled by and . We are satisfied from the record that the daughters contributed no services and no capital originating with them. Petitioner does not attempt to argue that the daughters contributed any services to the partnership. We think it is equally clear that nothing of *79 value moved from the daughters to the partnership. No new capital was introduced into petitioner's rice business as a result of the formation of the partnership. It is not contended by petitioner that the partnership was formed for any business reasons. Petitioner admits that the principal reason for creating the partnership was to give his daughters an independent income. Petitioner further states that with the creation of the partnership a manager was hired to enable him to gradually withdraw and to relieve him of some of the burdens of running the business. It seems clear to us that these reasons are of a family and personal nature rather than ones dictated by business necessity. The creation of the partnership did not affect the conduct of the business in any material way. We are further persuaded that the partnership's income was essentially created and controlled by petitioner. The partnership's immediate ability to earn income derived, we think, from petitioner's personal reputation, contacts and familiarity with the rice business. Even the name and the assets of the partnership were derived from petitioner's individual business. The extensive credit enjoyed by the partnership *80 must have depended upon petitioner individually. The management of the partnership's business was under petitioner's control as was the distribution of its profits. Furthermore, the income produced by the partnership and received by the daughters was used by them to pay their personal living expenses, which expenses would have otherwise been paid by petitioner. Under these circumstances and without the necessity for more elaborate discussion, we think the instant situation is clearly controlled by the rationale of the Tower and Lusthaus cases, supra. Petitioner's efforts to distinguish these cases are without merit. We hold, therefore, that respondent correctly added the amount of $4,232.86 to petitioner's community income. Decisions will be entered for respondent. Footnotes
1. For present purposes a partnership in commendam under Louisiana law is one of which one or more of the partners is a limited partner as that term is generally understood.↩